UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION
CASE NO. 11-CR-165ERW (MLM)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BRENT A. GIVENS,

    Defendant.

_____/

## DEFENDANT'S MEMORANDUM IN SUPPORT
## OF A REASONABLE SENTENCE

Defendant, **BRENT A. GIVENS**, by and through undersigned counsel, hereby files this Memorandum in Support of a Reasonable Sentence and moves this Court, pursuant to 18 U.S.C. § 3553(a), to impose a reasonable sentence, all facts and circumstances considered.

### I. PROCEDURAL HISTORY

On April 28, 2011, Mr. Givens was charged by Indictment with one count of conspiracy to commit money laundering of proceeds from the distribution of marijuana in violation of 18 U.S.C. 1956 (h), 1956(a)(1)(A)(1) and 1956(a)(1)(B)(i).  Pursuant to a written plea agreement, Mr. Givens pled guilty on September 16, 2011 to Count I in the Indictment.

### II. PERSONAL HISTORY

Brent Givens is a 26 year old young man who was born and raised in St. Louis, Missouri. Mr. Givens has an extended and "blended" family which includes three (3) siblings, three (3) half siblings and two (2) step-brothers.  From 2001 to 2006 (after dropping out of high school), and again from June 2011 through the present, Mr. Givens has been gainfully employed by Cement

Contractors in St. Louis as a day laborer.  It was during 2006 to 2011, when Mr. Givens owned and operated a California state-licensed marijuana business that he "lost his way," and went from acting as a law abiding citizen to being tempted to violate the law, and the succumbing to that temptation.  Mr. Givens' focus is to turn his life around.  He has been offered the opportunity to work with a relative (John Freeland) for a company in Cincinnati, Ohio called Grean.Bean.Delivery.  This established company (5 years) has locations in several states (Ohio, Kentucky, and Indiana) and specializes in delivering natural and organic food to customers' doorsteps.  There is also a division of the company devoted to community outreach, which includes childhood food solutions and health and wellness education.  This employment opportunity is an avenue for Mr. Givens to "change his life."

Mr. Givens has already made substantial progress in turning his life around since his arrest.  He has obtained consistent substance abuse and mental health counseling with/from Dr. Bayla Myer.  Moreover, in September 2011, Mr. Givens began attending a GED review class at St. Louis Missouri Community College.  As such, Mr. Givens is on the right path and taking the necessary steps to become a productive and law-abiding member of society.

### III.  ADVISORY GUIDELINE CALCULATIONS

According to the plea agreement, Mr. Givens and the Government agree that, pursuant to U.S.S.G. §2B1.1(b)(1)(D), the base offense level in this case is fourteen (14), (PSR ¶32).  "The parties agree that the amount of money which is the subject of the underlying offense is at least $30,000, but less than $70,000 in United States Currency, resulting in the recommended base offense level."  The parties also "recommend that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty."

(PSR, ¶38). In addition, the parties agree that pursuant to U.S.S.G. 2S1.1(b)(1)(B), six (6) levels should be added because Mr. Givens knew or believed that the laundered funds were the proceeds of, or were intended to promote an offense involving the distribution of a controlled substance. (PSR ¶33). Lastly, the parties agree that pursuant to U.S.S.G. 2S1.1(b)(2)(B), 2 levels should be added because defendant was convicted under 18 U.S.C. §1956. (PSR ¶34). Pursuant to the plea agreement, the parties did not stipulate to any additional enhancements sub judice. However, pursuant to U.S.S.G. 3C1.1, the United States Probation Office has added 2 levels to Mr. Givens' advisory sentence calculation for obstruction of justice. Mr. Givens filed an objection to this enhancement.

Should Mr. Givens' objection be sustained, his total advisory guideline offense level would be 19 with a Criminal History Category II.[1] Therefore, Mr. Givens' current advisory sentencing guideline range is between 33 and 41 months imprisonment. However, Mr. Givens requests the Court consider his sentencing guideline calculation to begin with a total offense level of 19, and, pursuant to Defendant's U.S.S.G. §4A1.3 Motion for Downward Departure, to sentence him as a criminal history category I offender. Therefore, the advisory guideline imprisonment range would begin at 30 to 37 months. In addition, for the reasons stated infra, Mr. Givens moves for a downward variance.

Mr. Givens is mindful that the crime with which he has been charged, and pled guilty to, is a serious Federal offense. While Mr. Givens recognizes the severity of his conviction, and this Court's responsibility at sentencing, there are mitigating factors which we respectfully bring to the Court's attention for its consideration in fashioning an appropriate sentence under the unique facts and circumstances of this case.

---

[1] Mr. Givens has moved for a downward departure in his criminal history category, pursuant to U.S.S.G. §4A1.3. (See infra).

## IV.  REQUEST FOR REASONABLE SENTENCE

Mr. Givens respectfully suggests that, based on the facts and circumstances of his individual case, in light of the factors enumerated in 18 U.S.C. § 3553(a), a below the advisory guidelines sentence is appropriate here.  18 U.S.C. § 3553(a) directs the Court to impose "a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing enumerated in § 3553(a)(2).  Section 3553(a)(2) provides that this Court shall fashion a sentence which:

> (A)   reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense;
>
> (B)   provides adequate deterrence to criminal conduct;
>
> (C)   protects the public from future crimes of the defendant; and
>
> (D)   provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).

"The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be **presumed** reasonable."  Nelson v. United States, 129 S. Ct. 890, 892 (2009), Covington v. United States, 129 S. Ct. 1612 (2009), Bain v. United States, 129 S. Ct. 2157 (2009) and United States v. Bravo, 624 F.3d 921 (8th Cir. 2010).  [Emphasis added].  The Supreme Court has now made it clear that a District Court's exclusive reliance on a Sentencing Guidelines calculation is erroneous, and that a lawful sentence may not be imposed on the assumption by the District Court that the Sentencing Guidelines calculation is reasonable.  It must, instead, be based on the statutory criteria in Section 3553(a), and the District Judge must explain what weight is being given to the statutory criteria at the time she imposes sentence.

The Supreme Court unequivocally stated in Nelson, that "cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable."  Id. at

4

892. The Supreme Court cited language from its decision in Gall v. United States, 552 U.S. 38, 50 (2007), that directed District Judges not to "presume that the Guidelines range is reasonable." Mr. Givens respectfully asks this Court to consider the case law, and principles, pronounced by the United States Supreme Court, in evaluating the advisory, and its ultimate, sentencing guideline range.

## V.  MITIGATING FACTORS

### 1.  Post Offense Rehabilitation

Mr. Givens' substance use, and abuse, has varied throughout the years ranging from daily to weekly to none at all.  Mr. Givens began drinking alcohol in high school at the age of 14 (approximately).  In addition, Mr. Givens began smoking marijuana (weekly) in the sixth grade when he was 13 years old.  After high school, Mr. Givens stopped smoking marijuana for the most part, only doing so approximately one time per year to date.  However, it was at the age of twenty-two, when Mr. Givens began legally growing marijuana, that he started drinking heavily on a daily basis.  Mr. Givens also has used cocaine and LSD in the past.

In July of this year, after his voluntary surrender and arrest in this case, Mr. Givens began treatment with Dr. Bayla M. Myer, a licensed psychologist, to evaluate and treat Mr. Givens for his substance abuse and mental health issues.[2]  Dr. Myer's diagnostic impression resulted in an Axis I diagnosis of Alcohol Abuse (305.00), Cannabis Abuse (305.20) and Cocaine Abuse (305.60). Regarding Mr. Givens' substance abuse, Dr. Myer's October 13, 2011, report (which has been submitted to the Government and the Probation Officer) indicated the following:

> It is very important to note what the testing revealed in the area of addiction.  It appears that Brent has acknowledged several alcohol and drug abuse problems.  BUT his substance abuse disorder is more based upon psychological maladjustment than the typical addictive behavior pattern.

---

[2] Mr. Givens' mental health issues are addressed herein. See infra.

5

> He did have the lifestyle that could have led to an alcohol or drug use problem but Brent does not have an addictive disorder. He used drugs and alcohol at times of stress because he was surrounded by the opportunity and a group of peers who were users.[3] Brent needs to remain in Saint Louis or another stable environment and get on a traditional track of career, job, education, peers, and family. Psychotherapy can teach Brent coping skills to constructively deal with stress and conflict, plus if he is not living in a drug environment and not in contact with drug using peers he will use the productive behaviors to cope with his life. Once Brent gets on a positive track and is not using substances and therefore has good judgment and not impulsive decision-making he will not engage in risk taking behaviors because he will actually have valued relationships and possessions he could lose.
>
> . . . Brent has been off substances for a while now and his attitude is one of confidence, he expects to succeed, he is sociable, he enjoys group activities, he sees his family in positive terms, he seems to be ambitious and reports behaviors associated with good work performance, and he has a generally positive attitude towards mental health treatment.

Significantly, Dr. Myer concluded "Brent was so upset by the current situation he discontinued use of marijuana and alcohol and cocaine without the benefit of a rehab program or any medical detoxification. And Brent has been successful with his abstinence." Mr. Givens has stayed the course on his quest for sobriety.

Mr. Givens also attended drug aftercare, per the Court's directive, at Risse Counseling Service in Festus, Missouri. On September 23, 2011, Mr. Givens discontinued participation in the aftercare program so as not to duplicate or conflict with his private counseling by Dr. Myer. On September 9, 2011, Mr. Givens submitted a urinalysis which tested positive for opiate usage. However, Mr. Givens was adamant that he did not use that, or any other, illegal substance. In order

---

[3] Dr. Myer noted in her report that the "negatives" that emerged from her testing were: "functions of his past environment, notably his childhood and the family dysfunction. These variables have changed and are no longer the strong determinants in Brent's life as an adult . . . These were environmental influences that made their mark and took their toll…"

6

to demonstrate same, Mr. Givens submitted to a hair follicle analysis in order to prove he was not using any controlled substances while on pretrial release.  Quest Diagnostics results were negative for any illegal substances, which confirmed that Mr. Givens had not been using same.  As a result, it was clear the Pretrial Services screening was a "false positive."  Prior to this "false positive" test result being revealed, this Court was presented with the "alleged" violation and a request to have Mr. Givens' remanded into custody after the entry of his plea on September 16, 2011.  It is clear the Court believed Mr. Givens is worth taking a "chance on," as the request for remand was denied.

As demonstrated in Dr. Myer's report, Mr. Givens has remained committed to his sobriety. Through his substance abuse counseling sessions, Mr. Givens has learned how to approach life in a drug free manner and deal with the psychological aspects of substance abuse.  Mr. Givens no longer associates with drug "users" and continues to focus on his personal goal of turning his life around. Mr. Givens is dedicated on this path to recovery.  Mr. Givens is committed to continued therapy and substance abuse counseling in the future.  Mr. Givens has clearly taken his arrest, charge and conviction, seriously and is taking all steps to ensure his life post 2011 be substance abuse (and crime) free.

In United States v. Kapitzke, 130 F.3d 820, 823 (8th Cir. 1997), the Court recognized "[a]nother ground for departure, post [] offense rehabilitation, is listed as one of the ways a defendant may show acceptance of responsibility warranting a reduction of the defendant's offense level.  *See U.S.S.G. §3E1.1* commentary app.n.1(g).  Because the acceptance of responsibility guideline takes post [] offense rehabilitation efforts into account, departure under *section 5K2.0* is warranted only if the defendant's efforts are exceptional enough to be atypical of cases in which the acceptance of responsibility reduction is usually granted."  In Kapitzke, in addition to the granting of the three (3) level reduction for acceptance of responsibility, the "district court concluded

7

departure under section 5K2.0 was warranted because Kapitzke had made 'extraordinary post-offense efforts at rehabilitation,' and had shown 'guilt and regret for his conduct beyond that normally seen by the Court.'" Id. The Eighth Circuit stated: "Although we are not persuaded that Kapitzke's post []offense rehabilitation 'removes [Kapitzke's] case from the heartland in which the acceptance of responsibility guideline was intended to apply,' . . ." but it gave deference to the District Court and found "Kapitzke's rehabilitation efforts are a permissible basis for a departure from the Guidelines." Id. at 824.

In United States v. Chapman, 356 F.3d 843, 849 (8th Cir. 2004), the Eighth Circuit held

> that atypical post-offense rehabilitation can by itself be the basis for a departure under § 5K2.0 . . . Atypical post-offense rehabilitation does not necessarily require that a defendant accept responsibility or that a defendant begin rehabilitative efforts before arrest. These facts, instead, are relevant to determining the genuineness of the defendant's rehabilitation. For example, a defendant admitting his wrongdoing to his family and friends is evidence that a district court could take into consideration when determining if post-offense rehabilitation is genuine and extraordinary as required by a § 5K2.0 departure . . . The absence of an acceptance of responsibility, on the other hand, does not necessarily preclude a departure under *§ 5K2.0*; it will simply make it more difficult for a defendant to prove that his rehabilitation is genuine and atypical . . . Likewise, pre-arrest rehabilitative efforts may better demonstrate a defendant's sincere desire to change his or her life than post-arrest efforts that may be tainted by a motive to appear reformed. In the end, however, only the atypicality of a defendant's post-offense rehabilitation determines whether a *§ 5K2.0* downward departure is appropriate. Information such as whether the defendant has accepted responsibility or the timing of the commencement of rehabilitative efforts serves only to determine the atypicability *vel non* of the defendant's behavior.

As such, based on the facts and circumstances of Mr. Givens' post-offense rehabilitation, he respectfully requests a downward departure in the advisory guidelines be granted. See United States

8

v. Newlon, 212 F.3d 423 (8th Cir. 2000) (where the Eighth Circuit affirmed a District Court's downward departure due to rehabilitative efforts which included, inter alia, pre-arrest counseling for alcohol and narcotics addictions and his counselor reporting a sincere desire for treatment); United States v. Almaguer, 2007 U.S. Dist. LEXIS 1708 (D. Neb. 2007) (where the Court departed downward due to a defendant's extraordinary rehabilitation efforts which included complete compliance with a drug-testing regimen while under supervision).

Mr. Givens' substance abuse issues have existed for many years. His substance abuse problem led to his criminal activity, arrest, charge and eventual conviction. This Federal conviction will never be erased. Mr. Givens' post offense rehabilitation rises to the level of warranting a downward departure, as he has taken the affirmative steps to attend the appropriate counseling with Dr. Myer, and continues to do so on a regular basis.

In addition, the Eighth Circuit recognizes "'the likelihood that [the defendant] will engage in future criminal conduct' is 'a central factor that courts must assess when imposing sentence.'" United States v. Kane, 639 F.3d 1121, 1132 (8th Cir. 2011); *citing* United States v. Pepper, 131 S.Ct. 1229, 1242 (2011). When imposing sentence on Mr. Givens, this Court should consider that Dr. Myer believes Mr. Givens is unlikely to be a recidivist:

> Due to the compliance of this patient with his treatment plan recommendations, his non-pathological general condition, his not ever being a threat to harm any person, his non-violent nature, and his extreme remorse and insight, **it is my professional opinion that Brent Givens would be highly unlikely to repeat this offense or any other illegal act.**
>
> . . . He made mistakes, he understands why, and he wishes to fix himself and better his life. Brent has turned to the proper resource to handle his issues, rather than ignore the corrective process and be at risk for another potential illegal acting-out event. **Now he will learn to trust himself not to endanger others and put himself and others at risk.**

> With the new skills and insight that Brent will acquire through psychotherapy he should be able to pursue a rewarding job and live a successful and meaningful life while posing no threat to society. **Brent will evolve into a different man than he was when he was involved in the present legal case.**

As such, Mr. Givens' post offense rehabilitation in regards to his substance abuse issues, coupled with the fact that he is unlikely to be a recidivist, are important factors for this Court to consider when imposing sentence sub judice.

**2. Request for Downward Variance Pursuant to U.S.S.G. §§ 5H1.3 and 5K2.13**

Under a strict reading of U.S.S.G. §§ 5H1.3 and 5K2.13, Mr. Givens is not likely to be eligible for a downward departure in his advisory guidelines due to his mental health at the time of the offense conduct. However, when considering the facts and circumstances of this matter, Mr. Givens respectfully requests a downward variance, and a sentence below the advisory guidelines which includes the special conditions of rigorous substance abuse and mental health treatment.

As outlined in the PSR (¶59), and described in detail in Dr. Myer's October 13, 2011 report, Mr. Givens has an Axis I diagnosis (amongst other things) of Generalized Anxiety Disorder. Mr. Givens' symptoms include depression, diffuse anxiety, lethargy, disrupted sleep, and extreme self-recrimination. In addition, Mr. Givens was ordered into counseling by the Court and began seeing a licensed professional counselor, Martin A. Risse, Jr.,. who concurred that Mr. Givens has an anxiety diagnosis.

Dr. Myer has been treating Mr. Givens, without interruption, since July 27, 2011. Due to Dr. Myer's treatment, Mr. Risse determined it was no longer necessary for Mr. Givens to see him as long as he continued treatment with Dr. Myer. Dr. Myer's opinion and conclusions are based on objective testing as well as her treatment of Mr. Givens. Dr. Myer believes that "psychotherapy is the most constructive treatment to correct Brent's acting out and illegal

behaviors that occurred . . . Brent needs to remain in psychotherapy to address his future and behavioral concerns, substance abuse issues, alcohol issues, and his anxiety."  "Brent's most significant diagnosis is his immaturity, which will significantly resolve on its own during the course of a long probationary period[4] wherein his required psychotherapy and the law will be supervising his behaviors."   Mr. Givens' mental health issues should be taken into account.

U.S.S.G. §5H1.3, Mental and Emotional Conditions, provides, in relevant part:

> Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and do not distinguish the case from the typical cases covered by the guidelines.

U.S.S.G. § 5K2.13, Diminished Capacity, provides:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense.
>
> However, the Court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicates a need to protect the public because the offense involved actual violence or serious threats of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117 of title 19, United States Code.

It is clear Dr. Myer believes that Mr. Givens' mental health contributed to his actions and conduct in this matter, however, under Federal law, it may be the case that it does not rise to the level of a downward departure.  But, it is clear that a downward variance is warranted <u>sub judice</u>.  In addition, when one objectively reviews the available expert mental health information, the conclusion is inescapable that Mr. Givens' mental health condition contributed in significant part

---

[4] Undersigned counsel is in no way being presumptuous as to what this Court's sentence upon Mr. Givens will be. The above is Dr. Myer's opinion.

11

to the commission of the offense of which he has been convicted.  Mr. Givens of course is still being treated by Dr. Myer for psychological counseling.

It is critical that this Court take these facts into consideration when sentencing Mr. Givens, a young man who unfortunately did not tackle his mental health issues until this late time.  However, it is clear that Dr. Myer believes psychotherapy will severely benefit Mr. Givens.  It's never too late to help oneself.  A downward variance is applicable here.

Districts Courts clearly have the discretion to consider defendant's diminished mental capacity.  See United States v. Myers, 503 F.3d 676 (8th Cir. 2007) (Court affirmed a downward variance of forty percent, the key basis for which was Defendant's diminished capacity because he was a mentally ill defendant who had been institutionalized and his illness interfered with his ability to control his impulses); United States v. Bracciale, 374 F.3d 998 (11th Cir. 2004) (The District Court departed two levels downward for diminished capacity due to defendant's bipolar disorder); United States v. Ventrilla, 233 F.3d 166 (2nd Cir. 2000) (Defendant's sentence was vacated and remanded because the Court did not adequately consider Defendant's request for downward departure based on evidence presented that he suffered from reduced mental capacity and that a causal link existed between that reduced capacity and the commission of the charged offense); United States v. Miranda, 505 F.3d 785 (7th Cir. 2007) (District Court failed to consider significant evidence presented by Defendant regarding his history of severe mental illness and diminished capacity; the Circuit Court vacated and remanded the case for resentencing).  When considering the facts and circumstances in this case, a downward variance based on Mr. Givens mental health is justified.

**3.  Criminal history overstates Mr. Givens' criminal activity**

Pursuant to U.S.S.G. §4A1.1(c), Mr. Givens has been assigned one (1) criminal history point based on his prior conviction for allowing a place for selling/using a controlled substance. (PSR ¶44). On December 12, 2007, Mr. Givens pled guilty in California to that offense, the imposition of his sentence was suspended, and he was placed on probation for a period of three (3) years (which terminated in January of this year). Accordingly, Mr. Givens was assigned, pursuant to U.S.S.G. §4A1.1(d), an additional two (2) criminal history points for committing the instant offense while on probation. These three (3) total criminal history points place Mr. Givens in a criminal history category II classification for sentencing purposes.

A review of Mr. Givens' past, which resulted in his criminal history category II, demonstrates that Mr. Givens is not the typical category II offender. Mr. Givens' previous criminal conduct, when compared to his criminal history category score, should not qualify him as a category II offender. Mr. Givens respectfully requests the Court downwardly depart from the advisory guidelines and treat Mr. Givens as a criminal history category I offender when imposing sentence. Mr. Givens has neither the prior record, nor the propensity to recidivate, to justify the criminal history II classification.

U.S.S.G. § 4A1.3(b)(1) of the advisory guidelines provides for a reduction in Mr. Givens' criminal history category score where it overstates the seriousness of a defendant's criminal conduct, **or the likelihood that the defendant will commit other crimes.** United States v. Orozco, 121 F.3d 628, 629 (11th Cir. 1997). "Departures for atypical criminal history **are specifically encouraged under U.S.S.G. § 4A1.3**." United States v. Delgado-Reyes, 245 F.3d 20, 22 (1st Cir. 2001); see United States v. Perez, 160 F.3d 87, 89 (1st Cir. 1998) [Emphasis added].

The Sentencing Guidelines, mandatory or advisory, were not intended to place a defendant with Mr. Givens' criminal history in a category II. The advisory Sentencing Guidelines do not

adequately consider the nature of Mr. Givens' criminal history as compared to the typical category II defendant, and, as a result, Mr. Givens' Criminal History Category of II overstates his prior criminal conduct.

Pursuant to U.S.S.G. § 4A1.3 (b) (1), Downward Departures, Standard for Downward Departures, "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."[5]  Mr. Givens committed these two offenses in a relatively short time frame, at a young age.  Mr. Givens is mindful that the offense conduct sub judice did occur while he was on probation for the first offense, however it should be noted that his sentence did not include imprisonment.  Had he been incarcerated, for a time period less than sixty (60) days as opposed to being sentenced to probation, he would not have received the additional two points.  When reviewing the totality of Mr. Givens' criminal history, we see he is not the typical criminal history category II offender, thus a downward departure is warranted.

The Eighth Circuit has upheld downward departures and/or variances due to an overstated criminal history of a defendant.  See United States v. Jimenez-Gutierrez, 491 F.3d 923 (8th Cir. 2007) (where the Court stated ". . . overstated criminal history has always been a permissible basis for a departure or a variance" when it gave a downward variance of 49%); United States v. Senior, 935 F.2d 149 (8th Cir. 1991) (where the Court found it was permissible for the District Court to hold that "the overstatement of the seriousness of [the defendant's] criminal history was a circumstance unusual enough to warrant departure").

---

[5] The notes to the guideline recognize "This policy statement authorizes consideration of a departure from the guidelines in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism, and provides guidance for the consideration of such departures."

14

To apply the guidelines' criminal history point scoring system strictly in this case would have the effect of overstating Mr. Givens' criminal history, and thus improperly enhancing his sentence.  The facts here demonstrate the atypical circumstance in which the sentencing guidelines' point system does not adequately consider the true nature of the defendant and his prior offenses. U.S.S.G. § 4A1.3 departures are "encouraged departures" for which the U.S. Sentencing Commission recognizes the inadequacies of the criminal history scoring system.  United States v. Wilkes, 130 F. Supp. 2d 222, 239 (D. Mass. 2001) (where the Defendant's minor criminal record "paints a picture of the typical Category I offender, not a Category III offender"); *citing* Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035 (1996).  District Courts are authorized to depart downward in cases that present aggravating or mitigating factors not taken into consideration by the Sentencing Commission.  Accordingly, a downward departure from the criminal history category II (of the now advisory guidelines) to criminal history category I is appropriate here.

## VI. **CONCLUSION**

In order to impose a reasonable sentence, this Court should consider the factors of 18 U.S.C. §3553 and the specific facts surrounding the instant case.   This Court's sentencing of Mr. Givens in a reasonable fashion as requested here is warranted.  Justice is fairly tempered by this Court's understanding and application of our judicial system's respect for mercy in an appropriate case. Surely, considering the guidelines, this is **the** appropriate case.

**WHEREFORE**, Defendant, **BRENT GIVENS,** prays that this Honorable Court will impose a reasonable sentence "sufficient, but not greater than necessary" to achieve the goals enunciated in 18 U.S.C. § 3553(a).

Respectfully submitted,

HIRSCHHORN & BIEBER, P.A.
Attorneys for Defendant
550 Biltmore Way
Penthouse Three A
Coral Gables, Florida 33134
Telephone:  (305) 445-5320
Telecopier:  (305) 446-1766

By:    s/Brian H. Bieber
         BRIAN H. BIEBER
         Florida Bar #8140
         bbieber@aquitall.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 9, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Jeanette Graviss, AUSA
Office of U.S. Attorney
111 S. Tenth Street
20th Floor
St. Louis, Missouri 63102
Jeanette.graviss@usdoj.gov

s/Brian H. Bieber
BRIAN H. BIEBER
